UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANNA R.,<br><br>                  Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI, Acting Commissioner<br>of the Social Security Administration,[1]<br><br>                  Defendant. | Civil No. 1:20-cv-1601-MSN-JFA |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. Nos. 18, 21). This action arises from plaintiff Anna R.'s challenge to the Administrative Law Judge ("ALJ") of the Social Security Administration's ("SSA") final decision denying a claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). For the reasons stated below, plaintiff's Motion for Summary Judgment is GRANTED (Dkt. No. 18), defendant's Motion for Summary Judgment is DENIED (Dkt. No. 21), and the ALJ's decision is REVERSED and REMANDED.[2]

### I.    Background

On December 19, 2018, plaintiff filed a claim for DIB, alleging disability under sections

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Dkt. No. 15). In accordance with those rules, this order excludes any personal identifiers such as plaintiff's full name, social security number and date of birth (except for the year of birth), and the discussion of plaintiff's medical information is limited to the extent necessary to analyze the case.

216(i) and 223(d) of the Act beginning April 10, 2018. Pl. Br. (Dkt. No. 19) at 1; *see* AR at 25, 190. After her claim was denied at the initial level and upon reconsideration, plaintiff appeared before ALJ Andrew M. Emerson for a telephonic hearing on June 19, 2020 to challenge the SSA's disability determination. AR at 30. Plaintiff, represented by an attorney, testified at that hearing, as did a Vocational Expert ("VE"). *Id.* On July 9, 2020, the ALJ issued a decision finding that plaintiff was not disabled under the act, but suffered from mononucleosis, Lyme disease, advanced disseminated Lyme Borreliosis complex with neuroborreliosis, postural orthostatic tachycardia syndrome ("POTS"), postural orthostatic hypotension/dysautonomia/autonomic dysfunction, and chondromalacia of the right knee. *Id.* at 15, 25. The Appeals Council found no basis to review and affirmed the ALJ's decision. *Id.* at 2.

Having exhausted her administrative remedies, plaintiff filed a Complaint with this Court on December 30, 2020, challenging the ALJ's decision. (Dkt. No. 1). Plaintiff filed a Motion for Summary Judgment (Dkt. No. 18) on August 17, 2021, including a Memorandum in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 19). Defendant filed a Cross-Motion for Summary Judgment (Dkt. No. 21) on September 17, 2021, along with a Memorandum in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 22). Plaintiff filed her Reply to Defendant's Motion for Summary Judgment on October 1, 2021 (Dkt. No. 24). Accordingly, the parties' motions are ripe for disposition.

## II.    Evidence before the ALJ

Below is a summary of plaintiff's relevant testimony before the ALJ and other medical evidence of plaintiff's impairments.

### A.  Testimony at the Administrative Hearing

At the hearing on June 19, 2020, plaintiff represented by an attorney, appeared before the ALJ. AR at 30. Plaintiff testified that she was approximately twenty-nine years old and had received her bachelor's degree in nursing in 2014. *Id.* at 35–36. She explained that she had worked as a registered nurse at a hospital from 2014 to 2015 and from 2017 to 2019. *Id.* Plaintiff alleges disability as of April 10th, 2018 when she stopped working. She explained that this date does not correspond with her last date of employment because between April 2018 and 2019 plaintiff used paid time off and was on short- and long-term disability. *Id.* at 37. As of the hearing date, plaintiff was still collecting long-term disability. *Id.* Plaintiff stated that she also worked as a registered nurse at a doctor's office from February 2016 to December 2016. *Id.*

In terms of her daily activity, plaintiff testified that she is mostly homebound, venturing out only for doctor's appointments or the occasional family event. *Id.* at 39. Plaintiff testified she no longer drives so when she does leave the house, a friend drives or she takes an Uber. *Id.* at 40. She also stated that she does not engage in any hobbies and rarely visits with others because the social interaction exhausts her. *Id.* at 41.

Plaintiff went on to detail that she is only able to walk short distances. *Id.* at 47. For example, plaintiff said she cannot walk to the kitchen without getting out of breath. *Id.* at 47–48. She also testified that she could stand for less than 20 minutes and finds sitting easier than standing. *Id.* at 48. Plaintiff relayed that she could lift less than five pounds and has trouble pushing or pulling objects because she does not have the stamina. *Id.* Plaintiff testified that her knees get swollen when she exerts herself, her heart rate increases, and she has chest pains. *Id.* Plaintiff stated she can only climb about four steps before she has to stop, and that she has difficulty balancing because she gets dizzy. *Id.* at 49. Plaintiff also testified she has trouble reaching overhead and has

trouble using her hands and fingers because of a tremor in her right hand. *Id.* Additionally, plaintiff described trouble concentrating for long periods of time. *Id.* at 51.

Plaintiff explained that she is on a variety of medications. *Id.* at 44–46. She also explained that she had lab work for her Lyme disease, but has not had any lab work done for the Lyme disease within the last six months because "once you have a positive blood test [it] remains positive." *Id.* at 47. "[M]ost medical specialists, including [plaintiff's] doctor don't think that's necessary to retest the Lyme . . . There are false negatives, but there are . . . very unlikely to have false positives." *Id.*

Plaintiff testified that in July 2020 she traveled to Luray, Virginia for her brother's wedding. *Id.* at 42. But plaintiff reported that she found it "extremely exhausting and [she] had to prepare for many weeks and rest for many weeks afterwards, and [she] didn't drive [her]self." *Id.* Plaintiff also mentioned traveling to the Outer Banks of North Carolina in July 2018 for a family vacation. *Id.* at 43. However, she testified that she was only able to drive part of the trip because she was too exhausted to continue. *Id.* Plaintiff described that while on vacation she went to the beach, sat at the poolside, but most of the time stayed in her room at the rental house. *Id.* at 44.

Plaintiff testified that she went out dancing for a couple of hours on New Year's Eve 2019. *Id.* at 70. She stated that she had not been out of the house for a long time and wanted to have some fun. *Id.* She elaborated that she attended a party where she danced for several hours. *Id.* at 71. However, plaintiff said she was in a lot of pain and had to recover for weeks following the event. *Id.*

The VE then testified. The ALJ described the following hypothetical person for the VE to consider: The hypothetical person was of the claimant's age, education, and work experience who is limited to light work, however, that individual can only stand and/or walk for four hours in an

eight-hour workday, can only frequently push or pull with both upper extremities, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders. *Id.* at 75.

The VE testified that a hypothetical person with those limitations could not perform the claimant's past work as a registered nurse. *Id.* at 76. However, the VE concluded the hypothetical individual could perform other light, unskilled, SVP 2[3] jobs, for example as an office helper or information clerk. *Id.* The ALJ then modified the limitations placed on the hypothetical person, such that the individual could perform sedentary work. The VE again found the hypothetical person could perform sedentary unskilled, SVP 2 jobs such as document preparer or telephone order clerk. *Id.*  at 77. The VE testified that such an individual could be absent at most two days per month. *Id.* at 78. The VE cautioned that anything more would eliminate work. *Id.*

### B.  Record Evidence

Below is a summary of the relevant medical evidence documenting plaintiff's history of seeking treatment for her impairments during the relevant period and after:

On March 30, 2018, May 2, 2018, May 21, 2018, and June 4, 2018, plaintiff's lab reports show that she tested positive for Epstein Barr virus (mononucleosis). AR at 333, 338, 341, 345.

On April 16, 2018, plaintiff was examined by Dr. Sharon Sherling of Virginia Family Medicine. *Id.* at 321. Plaintiff complained of decreased energy, malaise, and fatigue. *Id.* The Review of Symptoms ("ROS") indicated no abnormalities. *Id.* A physical examination indicated oropharyngeal swelling and erythema, and that plaintiff's lymph nodes were tender. *Id.* at 322.

Plaintiff returned to Dr. Sherling on May 21, 2018 for a visit that was largely the same except plaintiff reported neck pain and a physical examination revealed a heart murmur. *Id.* at 315.

---

[3] Specific Vocational Preparation rating.

On July 4, 2018, plaintiff again visited Dr. Sherling and reported that she was "feeling better" but had "fatigue if [she is] on [her] feet for more than 2 hours at a time." *Id.* at 303.

On August 13, 2018, Dr. Sherling again saw plaintiff—who reported neck pain due to a car accident. *Id.* at 299. Physical examination revealed plaintiff appeared fatigued and that she had oropharyngeal erythema. *Id.* at 300. Plaintiff's neurological and mental status examination was normal. *Id.*

Beginning in September 2018, plaintiff began treatment with Hai Jin Kim, MD. *Id.* at 382. On September 6, 2018, plaintiff reported to Dr. Kim that she experienced brain fog, air hunger, heart flutters, and extreme fatigue. *Id.* at 382. She also reported that she had trouble sleeping and was not able to wake up before 11 a.m. on most days. *Id.* The only physical observation Dr. Kim reported was moderate-to-severe cystic acne lesions on plaintiff's face. *Id.* at 383. Dr. Kim diagnosed plaintiff with chronic fatigue, abnormalities breathing, and insomnia, among other diagnoses. *Id.*

On September 20, 2018 plaintiff tested positive for Lyme Western Blot. *Id.* at 352, 384. At a November 30, 2018 examination plaintiff reported to Dr. Kim "slight improvement with energy" and that she was "able to rebound better." *Id.* at 384. However, plaintiff stated she was "still really tired." *Id.* at 386. Dr. Kim's neurological and physiological examinations were normal. *Id.*

Plaintiff was examined by Dr. Kim again on January 21, 2019, where plaintiff reported that she attended a New Year's Eve party where she danced for a couple of hours. *Id.* at 387. Plaintiff told Dr. Kim the activity made her "crash" and that it "took three weeks to come out of." *Id.* at 387. She also reported that "with any little exertion, she feels her heart races." *Id.* Plaintiff's physical examinations were normal except for cystic acne on her forehead. *Id.*

In March 2019, plaintiff visited Jemsek Specialty Clinic, PLLC which specializes in

infectious disease practice. *Id.* at 630–38. Ms. Rachel Markey, PA completed an initial consultation with plaintiff at that time which included a medical history and comprehensive physical examination. *Id.* at 630. Ms. Markey's "general review of systems" revealed that plaintiff suffered from short term memory loss, had trouble with word and information recall, executive functioning, and concentration and focus. *Id.* at 634. Plaintiff exhibited motor weakness in her hands in addition to tremors, headaches, and profound fatigue. *Id.* Plaintiff's "[t]andem walking was good with [her] eyes open and fair with eyes closed." *Id.* at 636. Ms. Markey prescribed antibiotics and ordered comprehensive labs to update plaintiff's "current immunologic, nutritional and endocrine status." *Id.* at 637.

On March 25, 2019, plaintiff was seen by Cardiology Consultation for heart palpitations. *Id.* at 608. Her review of systems was normal except for reports of "frequent joint pains." *Id.* Under "Impression and Plan" Dr. Sean Beinart wrote, "She does appear unable to tolerate activity with decreased stamina with exertional and nonexertional fatigue." *Id.* at 609.

On April 2, 2019, plaintiff returned to Cardiology Consultation for an exercise test and examination. *Id.* at 612. There, plaintiff revealed "marginal exercise tolerance" and "accelerated heart rate." *Id.* Plaintiff had a negative exercise echocardiogram. *Id.*

On May 6, 2019, plaintiff was examined by Cardiac Associates, P.C. *Id.* at 605. "[A]fter wearing a ZIO patch," results "showed no significant arrhythmias." *Id.* at 605. Plaintiff was diagnosed with POTS at this examination. *Id.* at 606.

Plaintiff was seen again by Ms. Markey of Jemsek Specialty Clinic, PLLC. on May 23, 2019. *Id.* at 627. Ms. Markey reported that plaintiff continued to suffer from short term memory loss, had trouble with word and information recall, executive functioning, concentration, and focus. *Id.* at 627. A physical exam revealed plaintiff had twitching in her legs, focal motor

weakness in her hands, and "poor tandem walk[ing] with her eyes closed." *Id.* Ms. Markey's subjective opinion reported that plaintiff had "pretty considerable pain and [her] fatigue was profound." *Id.* at 628.

On August 16, 2019, Ms. Markey reported that plaintiff was on an antibiotic cycle but was experiencing "some pretty significant Herx reactivity." *Id.* at 624. Ms. Markey also noted that "[p]ain continued to be a profound issue, as well as dysautonomic components . . . and limbic irritability." *Id.* at 624. She also stated that plaintiff is "90-95% bed-bound" and that plaintiff "will continue to be likely in a pre-debilitated state until" treatment progresses. *Id.* at 624–25.

### C.  Opinion Evidence

Below is a summary of the relevant opinion evidence commenting on plaintiff's history of seeking treatment for her impairments during the relevant period and after:

On April 10, 2018, Dr. Sherling completed a form for plaintiff' long-term disability insurer in which she opined that, due to plaintiff's mononucleosis, plaintiff should not engage in strenuous activity or exercise, and limit stressful situations. *Id.* at 394. On May 21, 2018, Dr. Sherling completed another form prescribing no strenuous activity due to plaintiff's fatigue. *Id.* at 415.

On July 30, 2018, Dr. Sherling wrote a letter acknowledging that plaintiff's physical exam was unremarkable, but due to plaintiff's reported continued physical exhaustion, fatigue, and malaise, plaintiff needed frequent rest periods and could not complete an eight-hour work shift. *Id.* at 404. Following an August 13, 2018 visit, Dr. Sherling opined on plaintiff's physical condition. Dr. Sherling wrote, "[a]lthough [plaintiff's] physical exam was mostly unremarkable, I noted that she is still following an atypical recovery for mononucleosis as she is still experiencing continued fatigue and malaise on a regular basis and needs frequent rest periods." *Id.* at 410. Dr. Sherling went on to state, "My professional opinion is that she is not able to return to work at this time." *Id.*

8

On November 30, 2018, Dr. Kim completed a "Medical Request Form, opining that plaintiff's "debilitating fatigue, malaise, and loss of stamina" impacted her return to work. *Id.* at 465. Dr. Kim restricted plaintiff to no work, frequent rest periods during the day, and no exercise. *Id.*

On January 4, 2019, Melody Gehosky, MSN, the Nurse Case Manager reviewing the medical information for plaintiff's Long-Term Disability claim wrote to Dr. Kim "seeking clarification on the no work statement provided by Dr. Kim." *Id.* at 373. Ms. Gehosky wrote, the "[m]edical on file at this time would not support that Ms. Remer is unable to work in any capacity." *Id.* Ms. Gehosky requested that Dr. Kim "clarify the restrictions placed on the attached physical abilities assessment as well as provide any documentation that helped you formulate Ms. Remer's current functional capacity." *Id.*

On January 16, 2019, Dr. Kim completed a Physical Ability Assessment, stating that his assessment of plaintiff's physical abilities was based on plaintiff's reports and his observation and examination. *Id.* at 366. Dr. Kim opined that plaintiff could sit for one hour at a time, stand for 20 minutes at a time, and walk 5-10 minutes at a time. *Id.* He also found that plaintiff had a tremor in her right hand that affected her fine manipulation, simple grasp, and firm grasp such that plaintiff could engage in those activities for at most two and a half hours a day. *Id.* Dr. Kim also opined that plaintiff could lift no more than five pounds, carry no more than five pounds, is unable to climb stairs or ladders, balance, stoop, kneel, crouch, crawl, or use her lower extremities for foot controls. *Id.* at 367.

Additionally, Dr. Kim found that plaintiff had light and audio sensitivity. *Id.* Significantly, Dr. Kim indicated that his opinion was supported by clinical findings. *Id.* at 366–67. Dr. Kim elaborated on his findings, stating that "any exertion [by plaintiff] creates heart palpitations, chest

tightness, [shortness of breath] and joint pain and fatigue." *Id.* at 367. He added that plaintiff "need[s] frequent rests." *Id.* Lastly, Dr. Kim opined that plaintiff had "significant cognitive fatigue, brain fog, short term memory impairment and decreased organizational skills." *Id.*

On January 18, 2019 Dennis Korpman, M.D., employed by plaintiff's long-term disability insurer, conducted a review of Dr. Kim's treatment records and November 30, 2018 opinion. *Id.* at 483. Dr. Korpman concluded that Dr. Kim's opinion was not supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file. *Id.* at 484. Specifically, Dr. Korpman pointed out that plaintiff's reported fatigue was inconsistent with the diagnostic testing and physical exams and no diagnostic tests were provided confirming a diagnosis of Lyme disease, mononucleosis, or celiac disease. *Id.*

On March 13, 2019 state agency medical expert Jo McClain, Psy.D. opined that plaintiff had Lyme disease and mononucleosis with ongoing symptoms of fatigue. *Id.* at 85. Dr. McClain noted that plaintiff's doctor since July 2018 (likely Dr. Kim) "has been reporting unremarkable [physical examinations] in records as recent as [January 2019]." *Id.* She noted that plaintiff's reported activities of daily life include preparing simple meals for herself, making her bed, grocery shopping, talking on the phone daily for twenty minutes at a time, and driving once a week, but plaintiff reported she is unable to work, socialize, attend services, dance, or travel. *Id.* at 84–85.

Dr. McClain opined that plaintiff's activities of daily life are partially consistent with her reported symptoms of fatigue but were contradicted by plaintiff's reports that she went on a beach vacation in July 2018 and to a New Year's Eve party in January 2019. *Id.* at 85. Dr. McClain relied on Ms. Gehosky's January 4, 2019 letter where she indicated there was little evidence on file to support an inability to return to work. *Id.* Lastly, Dr. McClain found that plaintiff had a medically determinable impairment of anxiety and depression, but that she "still attends parties" and uses her

phone and computer to socialize with others. *Id.*

On March 14, 2019, state agency medical expert Jack Hutchenson, M.D. opined that plaintiff's statements regarding her symptoms were partially consistent with the medical evidence on file, and that her stated symptoms were not substantiated by the objective medical evidence alone. *Id.* at 87. Again, it was found that plaintiff's reported symptom of fatigue was inconsistent with her reported activities of daily living because plaintiff vacationed in July 2018 and attended a party in January 2019. *Id.* at 87. Dr. Hutchenson found plaintiff's mental symptoms did not require counseling or extensive treatment. *Id.* at 88. Further, he found that the severity of plaintiff's symptoms and effects on her functions were not consistent with the medical evidence. *Id.* Accordingly, he found plaintiff could engage in light work. *Id.*

On June 17, 2019, state agency medical expert Julie Kennings, Ph.D. opined that plaintiff was capable of light work and had non-severe mental findings. *Id.* at 100. She noted that the records and plaintiff's activities of daily life did not indicate plaintiff had trouble with balance or loss of consciousness. *Id.*

On June 17, 2019, state agency medical expert Burt Spetzler, M.D. also opined that plaintiff was capable of light work and not disabled. *Id.* at 103, 106. He stated that plaintiff's condition resulted in some limitations in her ability to perform work related activities but not enough to prevent her from working altogether. *Id.* at 106.

On March 25, 2019, Dr. Beinhart opined that plaintiff had frequent heart palpitations, was dizzy when standing, and "appear[ed] unable to tolerate activity with decreased stamina with exertional and nonexertional fatigue." *Id.* at 609.

On April 9, 2019, Joseph Jemsek, M.D. of Jemsek Specialty Clinic, PLLC opined that plaintiff "absolutely cannot maintain gainful employment in any capacity." *Id.* at 601. Dr. Jemsek

indicated that plaintiff visited his "specialty infectious disease practice" on March 12, 2019 where plaintiff's medical history was reviewed, and a comprehensive physical examination was performed. *Id.* at 599. He indicated that plaintiff was first diagnosed with Lyme Borreliosis in September 2018 via laboratory serologies. *Id.*

At plaintiff's visit, Dr. Jemsek wrote, her diagnosis of "advanced, disseminated Lyme Borreliosis Complex with neuroborreliosis was confirmed based on plaintiff's medical history, clinical presentation and symptom picture, supportive laboratory findings, abnormal physical exam findings, and response to antibiotic therapies." *Id.* Dr. Jemsek detailed that plaintiff's current signs and symptoms included "severe, persistent fatigue state . . . chest pain, shortness of breath, palpitations, and noted tachycardia . . . hand tremor, and cognitive dysfunction, among others." *Id.* at 600. Dr. Jemsek stated that recent physical findings included a resting tremor, swelling and pain upon palpitation of the right knee, and significant neuro-irritability. *Id.*

In summary, Dr. Jemsek concluded that plaintiff was unable to sustain sedentary or otherwise undemanding work due to her poor stamina and endurance, poor concentration and mental fogginess, dizziness, and pain and swelling in the joints. *Id.* Lastly, Dr. Jemsek described plaintiff's limited activities of daily living, including her inability to cook, clean, do laundry, or shop. *Id.* Dr. Jemsek found that plaintiff was only able to complete tasks such as preparing a simple meal or folding laundry over a period of days. *Id.* at 601. Further, Dr. Jemsek detailed that plaintiff could perform self-care activities, but there are intervals where she could not bath, dress, or brush her teeth without assistance. *Id.*

On April 26, 2019, Monika Saeedian, M.D., who is employed by plaintiff's long-term disability insurer, reviewed treatment reports from Drs. Kim, Beinart, Jemsek, and Sherling as well as plaintiff's laboratory reports. *Id.* at 590. Dr. Saeedian's assessment, for the time period of

February 20, 2019 and forward found that Dr. Jemsek's opinion was well-supported by medically acceptable clinical or laboratory diagnostic techniques and agreed that claimant was unable to work at that time. *Id.* at 592.

On May 1, 2019, Dr. Saeedian provided an addendum to her opinion to consider the time period of October 7, 2018 forward. *Id.* at 597–98. The addendum evaluated medical records from Dr. Kim's consultations with plaintiff and concluded that claimant was "functionally limited" and recommended total disability. *Id.*

On April 13, 2020, Dr. Jemsek wrote an addendum stating that plaintiff "is unable to function either physically or cognitively, on a sustained, consistent, and predictable basis." *Id.* at 685. He maintained that plaintiff cannot work. *Id.*

On September 24, 2019, Ms. Markey completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" where she described the signs and physical findings of plaintiff's August 16, 2019 examination. *Id.* at 675. Ms. Markey noted that plaintiff had right sided paranuchal tightness and tenderness to compression, plaintiff's abdomen was tender with palpitation, and that plaintiff had a notable resting tremor and hyper flexion. *Id.* Plaintiff's reported symptoms, according to Ms. Markey, included pain in plaintiff's shoulder, knee, hip, and neck, increased photophobia and phonophobia, dysautonomia, and heightened anxiety and depression. *Id.* Ms. Markey opined that plaintiff could sit for one hour a day, stand or walk for up to 20 minutes, could not use her right hand due to tremors, and could not lift more than four pounds. *Id.* at 675. She also indicated that plaintiff occasionally needed to use a wheelchair, and could never squat, crawl, climb stairs, or climb ladders. *Id.* at 675–76. Additional limitations Ms. Markey noted that may interfere with plaintiff's ability to work include tremors after mental and physical exertion, brain fog, lack of cognitive clarity, and extreme physical fatigue, among others. *Id.* at 676.

### III.    Disability Evaluation Process

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment that makes it impossible to do past relevant work or any other substantial gainful activity ("SGA") that exists in the national economy. *Id.*; *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983). Determining whether an applicant is eligible for disability benefits under the SSA entails a "five-part inquiry" that "asks: whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the SSA's official Listing of Impairments]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work." *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). Before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), meaning the most that the claimant can do despite his physical or mental limitations. 20 C.F.R. §§ 416.920(h), 416.945(a)(1).

If the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." *Hines*, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir.

1981). If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. *Hines*, 453 F.3d at 567.

### A.  The ALJ's Decision

On July 9, 2020, the ALJ issued a decision finding plaintiff not disabled from April 10, 2018 through the present and denying her application for benefits. AR at 25. Under the first step of his five-part inquiry, the ALJ found that plaintiff was not engaged in any substantial gainful activity since April 10, 2018, plaintiff's alleged onset date. *Id.* at 15.

At step two, the ALJ found that plaintiff had the following severe impairments: mononucleosis, Lyme disease, advanced disseminated Lyme Borreliosis complex with neuroborreliosis, POTS, postural orthostatic hypotension/dysautonomia/autonomic dysfunction, and chondromalacia of the right knee. *Id.*

The ALJ also found that plaintiff's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere. *Id.* at 16.

Under step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the SSA's List of Impairments. *Id.* at 17. The ALJ considered listings 4.05 (recurrent arrhythmias), and 1.02 (major dysfunction of a joint). *Id.* at 17–18.

Before proceeding to step four, the ALJ determined plaintiff's RFC. In doing so, the ALJ considered all reported symptoms and the extent to which those were reasonably consistent with objective medical evidence and opinion evidence. *Id.* at 15–19. The ALJ applied a two-step process, considering first whether plaintiff's underlying impairments would be reasonably

expected to produce plaintiff's symptoms, and second whether those impairments limited plaintiff's functioning. *Id.* The ALJ determined that, while plaintiff's impairments could be reasonably expected to cause plaintiff's symptoms, plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence" in the record. *Id.* at 19.

The ALJ concluded that plaintiff had the RFC to perform sedentary work[4] but could "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl", could "frequently push and pull" with both arms, and "frequently reach overhead." *Id.* at 18. In support, the ALJ provided an overview of plaintiff's health treatment. *Id.* at 22–23. The ALJ at this point focused specifically on plaintiff's examinations showing "normal neurological examination findings" as well as plaintiff's stress echocardiogram "which was noted to be normal." *Id.* at 19–20. The ALJ found "the claimant's subjective complaints of symptoms exceed[ed] the objective medical evidence of record." *Id.* at 20. Further, the ALJ found, "[t]he claimant's treatment has been minimal and conservative and the ongoing normal examinations support that the limitation to sedentary work would account for the claimant's complaints of fatigue as a result of the combination of her impairments." *Id.* at 21.

The ALJ gave varying weight to the medical opinions on record. For example, the ALJ explained that he found the state agency medical opinions of Joe McClain, Psy.D., Jack Hutcheson, M.D., and Burt Spetzler, M.D. moderately persuasive, and the opinion of Julie Jennings, Ph.D. partially persuasive taking the entire record into consideration. *Id.*

The ALJ also considered the other opinions in the record. The ALJ found that Dr. Kim's

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(b).

November 2018 opinion was minimally persuasive because it was not supported by claimant's most recent neurological and cardiovascular exams. *Id.* at 22. The January 4, 2019 opinion of Melody Gehosky, MSN and Dr. Sherling's various opinions were considered unpersuasive because they addressed the "issue of disability which is reserved to the Commissioner of Social Security." *Id.* The ALJ found Ms. Gehosky and Dennis Korpman, M.D.'s January 19, 2021 opinions persuasive because they opined that Dr. Kim's opinion was not supported by objective medical evidence. *Id.* The opinions of Joseph Jemsek, M.D., Monika Saeedian, M.D., Sean Beinhart, M.D., and Rachel Markey PA were found to be unpersuasive because the opinions relied upon Ms. Markey's "benign clinical findings." *Id.* at 23.

Under step four, the ALJ found "the claimant [was] unable to perform any past relevant work" as a registered nurse, as the plaintiff is limited to a reduced range of sedentary work. *Id.* at 24. Under step five, the ALJ found that "jobs exist in significant numbers . . . that the claimant can perform." *Id.* Further, the ALJ found plaintiff's ability to perform all or substantially all of the requirement of this level of work "has been impeded by additional limitations." *Id.* To determine the extent of these limitations, the ALJ relied on testimony from a VE. *Id.* The VE found that, given plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs such as document preparer, telephone order clerk, and call out operator. Therefore, plaintiff was found "not disabled." *Id.* at 25.

**B.  Appeals Council Review**

The Appeals Council denied plaintiff's request for review, finding no basis for review, and held the ALJ's decision to be the final decision of the Commissioner of Social Security. *Id.* at 2.

## IV.    Standard of Review

When a social security claimant appeals a final decision of the SSA, the district court's review is limited to determining whether there is substantial evidence in the administrative record to support the agency's findings or whether the ALJ made an error in law. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 589 (4th Cir. 1966). When evaluating whether the Commissioner's decision is supported by substantial evidence, "it is not within the province of a reviewing court to determine the weight of the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1996). The Court must affirm the agency's decision if it is supported by substantial evidence. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When evaluating whether the ALJ committed an error in the law, the Fourth Circuit applies a harmless error analysis. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015). A reviewing court must make "[a]n estimation of the likelihood that the result would have been different," *Morton-Thompson v. Colvin*, No. 3:14-cv-179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)), and affirm an ALJ's decision when, on the basis of the ALJ's entire opinion, the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-cv-61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016).

## V.    Aanalysis

Plaintiff moves for summary judgment based on an alleged error with the ALJ's opinion: the ALJ failed to properly weigh the opinion evidence of record in his RFC determination. Pl. Br. at 1. Defendant responds in opposition that the ALJ fully evaluated the evidence on the record and

18

explained the basis for his conclusion in a well-articulated decision. Def. Opp. (Dkt. No. 22) at 1–2. The question before the Court, therefore, is to determine whether the ALJ's opinion was supported by "substantial evidence." For the reasons that follow, the Court grants Plaintiff's Motion for Summary Judgment, denies defendant's Motion for Summary Judgment, and overrules the ALJ's decision.

Before proceeding to step four of the disability analysis, the ALJ must determine a claimant's RFC. The RFC is the most physical and mental work a claimant can still do despite limitations from her impairments. 20 C.F.R. § 404.1545(a)(1). In determining an RFC, the ALJ is required to consider all "medically determinable impairments of which" he is aware, including "medically determinable impairments that are not 'severe.'" *Id.* § 404.1545(a)(2). The RFC is based on "all of the relevant medical and other evidence." *Id.* § 404.154(a)(3). The Fourth Circuit has held that an ALJ is not required to base an RFC assessment on a specific medical opinion, but may consider the record as a whole, including subjective complaints, objective medical evidence, and medical source opinion. *See Felton-Miller v. Astrue*, 459 Fed. App'x 226, 230–31 (4th Cir. 2011).

When evaluating medical opinions and prior administrative medical findings, the ALJ will not defer or give "any specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). "The most important factors [considered by the ALJ] when [evaluating] the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." *Id.*[5] When evaluating a medical opinion or prior administrative medical finding, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

---

[5] For claims filed on or after March 27, 2017, such as plaintiff's claims, the ALJ must apply the standard codified at 20 C.F.R. § 404.1520c. For claims filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply.

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Additionally, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

Plaintiff finds error with the ALJ's evaluation and explanation of nearly every medical opinion and administrative finding in the record. The Court will take each objection in turn.

### A. State Agency Determinations

Plaintiff argues that the ALJ erred in considering the state agency consultant opinions of Drs. Hutcheson, McClain, and Spetzler, and Ms. Jennings moderately persuasive. Pl. Br. at 8–9. Specifically, plaintiff contends that "these decisions pre-dated all evidence of Plaintiff's Lyme Borreliosis complex treatment." *Id.* In support, plaintiff relies on a rescinded 1996 SSA Ruling to argue the state agency consultant must have considered a "complete case record" for the ALJ to rely on the opinion. *Id.* at 8. Defendant argues the ALJ properly considered the state agency consultants' opinions in conjunction with "subsequent medical evidence of record received" after their reports were published. Def. Br. at 17.

This Court finds the ALJ properly considered the four state agency consultants' opinions and evaluated each for supportability and consistency. *First,* the ALJ found Dr. McClain's March 13, 2019 opinion was only "moderately persuasive as the record supports that the claimant's mental impairments are non-severe." AR at 21. Nevertheless, the ALJ found that when evaluated in conjunction with evidence "received at the hearing level," the ALJ disagreed with Dr. McClain's opinion and found mild limitations. *Id*.

*Second*, The ALJ found Dr. Hutcheson's March 14, 2019 opinion was only "moderately

persuasive based on the evidence available at the initial level." *Id.* Dr. Hutcheson opined that plaintiff would be limited to work at the light exertional level. *Id.* However, the ALJ disagreed with Hutcheson's opinion based on "subsequent medical evidence of record received as well as the claimant's testimony," finding plaintiff could perform only sedentary work. *Id.*

*Third*, the ALJ found Ms. Jennings's June 17, 2019 opinion was "partially persuasive as the record supports that the claimant's mental impairments are non-severe." *Id.* Md. Jennings found plaintiff had no limitations in understanding and remembering and mild limitations in interacting and concentration. *Id.* However, the ALJ found that "based on the entirety of the record including updated evidence received at the hearing level," there would be mild limitations in all mental functional areas." *Id.*

*Fourth*, the ALJ found Dr. Spetzler's June 17, 2019 opinion "moderately persuasive based on the evidence available at the initial level." *Id.* Dr. Spetzler opined that plaintiff was limited to light work. *Id.* However, the ALJ disagreed with Dr. Spetzler's ultimate conclusion based on "subsequent medical evidence of record received [and] the claimant's testimony," finding plaintiff was limited to sedentary work. *Id.*

Thus, it is clear the ALJ properly considered each state agency consultants' opinion in light of the incomplete record before him and properly contextualized the opinions' supportability and consistency accordingly.

### B.  Dr. Kim's Opinion

Plaintiff argues the ALJ failed to review the entirety of Dr. Kim's opinion, instead "pick[ing] and choos[ing] selected notes" to rely upon. Pl. Br. at 10. Defendant argues that the ALJ properly explained that Dr. Kim's opinions were minimally persuasive because Dr. Kim's opinion was only supported by subjective reports and the severe restrictions Dr. Kim imposed were

contradicted by plaintiff's reported ability to go out dancing. Def. Opp. at 17–18.

In his decision, the ALJ references opinions prepared by Dr. Kim on November 30, 2018 and January 16, 2019. AR at 21–22. In Dr. Kim's November 30, 2018 opinion, he opined "that the claimant would need frequent rest periods throughout the day, and that she has debilitating fatigue." *Id.* at 21–22. The ALJ found the severe restrictions recommended in Dr. Kim's opinion was "support[ed]" given Dr. Kim's neurological and cardiovascular examination of the claimant that same day were largely normal. *Id.* at 22.

Next, the ALJ assessed the limitations set forth in the January 16, 2019 opinion:

Dr. Kim opined the claimant could sit one hour at a time, stand 20 minutes at a time, walk 10 minutes at a time, occasionally reach, occasionally use her right arm and hand, frequently use her left arm, lift less than 5 pounds, and never climb, balance, stoop, kneel, crouch, and crawl, or operate foot controls.

*Id.* The ALJ found the opinion "minimally persuasive" as it was "only *supported* by reported subjective history and symptoms provided by the claimant." *Id.* (emphasis added). Further, the ALJ found the opinion was not supported by cited "clinical signs uncovered in physical and mental examinations and laboratory studies." *Id.* The ALJ found Dr. Kim's examination of plaintiff five days later did not support such severe restrictions and that Dr. Kim's opinion "is also not consistent with the claimant's report that she went out dancing for a couple of hours just 15 days earlier." *Id.*

Effectively, plaintiff asks the Court to reexamine how the ALJ weighed Dr. Kim's opinion. The ALJ's opinion properly articulates how he evaluated Dr. Kim's opinions for supportability and consistency. 20 C.F.R. § 404.1520c(c). However, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary." *Hays*, 907 F.2d at 1456. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings

22

of fact and to resolve conflicts in the evidence." *Id.* (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). Here, the ALJ properly articulated how he "considered [Dr. Kim's] medical opinions . . . together in a single analysis using the factors [of supportability and consistency]. [The ALJ] is not required to articulate how [he] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

### C.  Melody Gehosky, MSN and Dennis Korpman, M.D.

Plaintiff takes issue with the ALJ's assessment of Ms. Gehosky's and Dr. Korpman's reports. Specifically, plaintiff argues that the ALJ did not explain why he found Ms. Gehosky's and Dr. Korpman's opinions persuasive over Dr. Kim's conflicting opinion. Pl. Br. at 11. Defendant on the other hand argues that the ALJ was not required to provide an analysis of how he considered Ms. Gehosky and Dr. Korpman's opinions. Def. Br. at 18–19. Their opinions, defendant contends, are "other medical evidence" under 20 C.F.R. § 404.1513(a)(3), rather than a "medical opinion" under 20 C.F.R. § 404.1513(a)(2). Def. Br. at 18–19. Because, as defendants argue, 20 C.F.R. § 404.1520c requires that the ALJ evaluate only "medical opinions and prior administrative medical findings," for supportability and consistency, the ALJ did not fail to adequately explain how it weighed Ms. Gehosky's and Dr. Korpman's opinions. *Id.*

Here, the ALJ was not required to provide an explanation for how it evaluated Ms. Gehosky's and Dr. Korpman's opinions as they are findings by plaintiff's long-term disability insurer and not medical opinions or prior administrative medical findings. Under 20 C.F.R. § 404.1513(a)(3), these opinions are "other medical opinions" because they are judgments about the nature and severity of plaintiff's impairments. *See* 81 Fed. Reg. 625060, 62565–66 (Sept. 6, 2016) (amended regulation to no longer require that ALJs provide analysis on decisions made by nongovernmental entities). Therefore, the explanation the ALJ provided was adequate.

### D.  Joseph Jemsek, M.D. and Rachel Markey, PA's Opinions

Plaintiff argues that the ALJ's evaluation of Dr. Jemsek's opinions fail because the ALJ decided plaintiff's RFC before evaluating Dr. Jemsek's opinion, and the ALJ rejected Dr. Jemsek's opinion because he did not examine plaintiff. Pl. Br. at 11–12. Defendant argues that the ALJ did consider the evidence of the record and provided sufficient support for both his RFC findings and his determination of plaintiff's credibility. Def. Br. at 19. Further, defendant argues that the regulations allow the ALJ to consider whether Dr. Jemsek was an examining physician. *Id.*

The ALJ found Dr. Jemsek's opinion

> unpersuasive as it is unsupported by the medical evidence of record, which supports that she could perform work at the sedentary exertional level. Additionally, Dr. Jemsek never saw the claimant. The claimant was instead seen at Dr. Jemsek's clinic by Rachel Markey, PA. Examination by Ms. Markey revealed rather benign clinical findings despite the claimant's subjective complaints.

AR at 23. The ALJ similarly found Ms. Markey's opinion "unpersuasive as it is unsupported by the medical evidence of record." AR at 23. Further, the ALJ stated Ms. Markey's clinical findings were benign and that her opinion "relies extensively on subjective reports of symptoms, rather than on objective clinical signs and laboratory studies." *Id.*

Here, the ALJ's opinion is unsupported by the record. First, the ALJ's conclusory statement that Dr. Jemsek's opinion is unsupported by the medical evidence of record, without any explanation, falls short of satisfying the standard. "[The ALJ] must set forth his own interpretation and explain why he, rather than the doctors, are correct." *Moores v. Colvin*, 173 F. Supp. 3d 989, 997 (E.D. Cal. 2016). Dr. Jemsek, an infectious disease specialist, stated that plaintiff had Lyme disease, confirmed by plaintiff's clinical presentation and symptom picture, "with the characteristic triad of arthritic, encephalopathic, and neuropathic manifestations." AR at 630. Plaintiff's diagnosis was also confirmed with "supportive laboratory findings, abnormal physical exam findings, and response and reactivity to previous antibiotic therapies." *Id.*

The ALJ also erred in rejecting Dr. Jemsek's and Ms. Markey's opinions for relying on plaintiff's subjective complaints. *Id.* at 23. Plaintiff's positive laboratory test for Lyme disease provides an objective basis for Dr. Jemsek's and Ms. Markey's opinions. *Moores*, 173 F. Supp. 3d at 997. The ALJ specifically found that plaintiff's severe impairments include Lyme disease, *id.* at 15, and "symptoms of Lyme disease include fatigue, chills, fever, headache, muscle pain and weakness, a stiff neck, speech problems, joint swelling, memory and concentration problems and vision problems." *Moores*, 173 F. Supp. 3d at 997. At no point does the ALJ provide an explanation for how or why objective evidence of plaintiff's symptoms beyond a positive blood test would exist for a patient suffering from Lyme disease.

Dr. Jemsek's and Ms. Markey's opinions are supported by evidence that plaintiff exhibited symptoms of Lyme disease. Ms. Markey indicated that plaintiff reported symptoms of short-term memory impairment, chronic fatigue, muscle weakness, and "brain fog." *Id.* at 675–76. She also reported that a physical examination of plaintiff revealed mottled skin, para-nuchal tenderness and tightness, cardiac tachycardia, tremors, and that plaintiff's abdomen had "tenderness to palpation." *Id.* at 624–25. The ALJ may not disregard plaintiff's reported symptoms without explanation when symptoms of Lyme disease do not lend themselves to objective findings.

The ALJ also ignored plaintiff's limitations that lend support to her reported symptoms, such as her activities of daily living, and failed to specify which activities were inconsistent with the limitations assessed by Dr. Jemsek. This is especially problematic given that plaintiff's reported activities are limited. Dr. Jemsek's opinion detailed that plaintiff is frequently unable to cook, clean, do laundry, or shop, but may only perform simple daily maintenance activities, such as preparing a simple meal or folding laundry. *Id.* at 631. At times, Dr. Jemsek noted, plaintiff is not able to perform self-care activities such as bathing, dressing, or brushing her hair and teeth and

will require assistance or neglect them. *Id.* at 632.

The ability to perform these activities is not at odds with the restrictions Dr. Jemsek placed on plaintiff's ability to work. That plaintiff is able to perform minimal daily activities, such as those described, does not establish that a person is capable of engaging in substantial physical activity. *See Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir.1993) (ruling that the ALJ may not rely on minimal daily activities as substantial evidence that claimant does not suffer disabling pain). Even claimant's report that she went out dancing for a couple hours on New Year's Eve does not contradict Dr. Jemsek's opinion that plaintiff is mostly homebound, "primarily leaving her residence to attend medical appointments and then otherwise only for brief, sporadic periods." AR at 632. Thus, the ALJ's conclusory statement that Dr. Jemsek's and Ms. Markey's opinions were unsupported by objective evidence is not supported by the record and is not a legitimate basis for rejecting their opinions.

### E.  Drs. Saeedian and Beinart's Opinions

Plaintiff similarly argues that the ALJ erred in finding these opinions unpersuasive because the ALJ's "rationale is the same used in dismissing Dr. Jemsek's [opinion] and must fail for the same reasons." Pl. Br. at 12–13. Further, plaintiff argues, the ALJ failed by ignoring objective evidence, specifically the report from plaintiff's exercise echocardiogram." *Id.* The Court agrees.

Dr. Saeedian's April 26, 2019 opinion found that Dr. Jemsek's opinion was well-supported by medically acceptable clinical or laboratory diagnostic techniques and agreed that claimant was unable to work at that time. AR at 23. The ALJ found this opinion "unpersuasive as it is un-supported by the medical evidence of record," specifically Ms. Markey's benign clinical findings. *Id.* Dr. Saeedian's May 1, 2019 opinion found that plaintiff suffered from total disability for October 7, 2018 and forward. *Id.* The ALJ found the opinion inconsistent with the medical

evidence of record and unpersuasive because it opined on the issue of disability. *Id.*

For the same reasons the ALJ's opinions of Dr. Jemsek and Ms. Markey were unsupported by substantial evidence, so too is the ALJ's opinion of Dr. Saeedian's April 2019 opinion. The ALJ does not explain why he finds Dr. Saeedian's conclusions inconsistent with the record beyond conclusory statements.

Further, the ALJ's evaluation of Dr. Saeedian's May 2019 opinion is also conclusory and does not explain why the opinion is unsupported and inconsistent. Rather, the ALJ disregards the opinion because it goes to the issue of disability. As in her April 2019 opinion, Dr. Saeedian's May 2019 opinion found "it would be reasonable to conclude the claimant was functionally limited from [October 7, 2018] forward." *Id.* at 597–98. However, the ALJ finds that Dr. Saeedian's final conclusion, "total disability would also be supported for [October 7, 2018] and forward," *id.* at 598, invalidates the entire opinion. *Id.* at 23.

It is "not appropriate to discount an opinion in its entirety simply because, in addition to otherwise valid medical opinions, it also contains a statement that goes to the issue of disability." *Yarborough v. Comm'r of Soc. Sec.*, No. CV 20-12286, 2022 WL 351073, at *8 (E.D. Mich. Jan. 18, 2022). Thus, while the ALJ may discount the portion of Dr. Saeedian's May 2019 opinion about plaintiff's "total disability," as the issue of disability is reserved to the Commissioner, to the extent the ALJ discounted the other aspects of Dr. Saeedian's opinion due to its inclusion of a disability finding, such discounting would be in error.

Lastly, the ALJ's evaluation of Dr. Beinhart's opinion is not based on substantial evidence. In support of his conclusion that the opinion is "unsupported by the medical evidence of record" the ALJ points to Ms. Markey's benign clinical findings. AR at 23. It is unclear why these are mentioned. Dr. Beinhart's opinion does not rely on Ms. Markey's opinion, but rather his own

examination, medical history of the patient, and review of plaintiff's electrocardiogram. *Id.* at 609. Further, Dr. Beinhart's March 25, 2019 opinion was written prior to Dr. Jemsek's April 2019 and Ms. Markey's September 2019 opinion. It may be that Dr. Beinhart's opinion is not supported by the record, but the ALJ does not point to any specific findings in Dr. Beinhart's opinion to explain his evaluation for supportability and consistency. Thus, the ALJ's opinion is not supported by substantial evidence.

Accordingly, this matter must be remanded for further consideration of plaintiff's physical impairments and how they impact her ability to work. The ALJ's RFC assessment "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotations omitted). An ALJ's failure to do so constitutes reversible error. *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further proceedings. *Nakia Tanisha W. v. Saul*, No. CV TMD 19-1134, 2020 WL 2198092, at *6 (D. Md. May 5, 2020).

## VI.    Conclusion

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. No. 18) is GRANTED. Defendant's Motion for Summary Judgment (Dkt. No. 21) is DENIED. Defendant's final decision is REVERSED under the fourth sentence of 42 U.S.C. § 405(g). This matter is REMANDED for further proceedings consistent with this opinion. A separate order will issue.

It is SO ORDERED

                                                        /s/
                                            Hon. Michael S. Nachmanoff
                                            United States District Judge

April 4, 2022
Alexandria, Virginia